**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Morayma Guadalupe Cardona,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>Exclusive Auto Group LLC et al.,<br><br>　　　　　　　　Defendants. | No. CV-25-01843-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant Carvana LLC's ("Defendant Carvana") Motion to Compel Arbitration and Stay Action (Doc. 18), Plaintiff Morayma Cardona's Response (Doc. 24), and Defendant Carvana's Reply (Doc. 27). For the following reasons, the Court will grant the Motion.

**I.     BACKGROUND**

On May 28, 2025, Plaintiff filed a Complaint against four Defendants: (1) Exclusive Auto Group, LLC, (2) Sebastian Miranda Sandoval, (3) Carvana LLC, and (4) Western Funding Incorporated. (Doc. 1.) Plaintiff brings claims for violation of the Federal Odometer Fraud Act, violation of the Arizona Consumer Fraud Act, and Breach of Contract. (*Id.* at 9–12.) Plaintiff seeks damages because she purchased a used vehicle and learned years later that the number on the vehicle's odometer had been altered to reflect a lower mileage. (*See id.*)

In June 2023, Plaintiff purchased the used vehicle ("the Vehicle") from Defendant Exclusive Auto Group, LLC ("Exclusive Auto") by entering into a Retail Installment

Contract and Security Agreement ("the Purchase Agreement"). (*Id.* at 6, ¶¶ 43–48.) The Purchase Agreement contained an arbitration provision. (Doc. 18 at 2.) At the time of the purchase, Defendant Exclusive Auto represented that the odometer reading on the Vehicle was 114,325 miles. (Doc. 1 at 6–7, ¶¶ 46–55.) Later, when Plaintiff attempted to trade in the vehicle, she learned that the mileage on the odometer had been rolled back. (Doc. 1 at 7, ¶ 58.) A "CarFax report . . . showed 22 event records where the odometer was recorded with mileage in excess of 114, 325 miles beginning on June 8, 2018 with 118,086 miles and ending on December 30, 2021 with 279,555 miles." (*Id.* ¶ 59.) Plaintiff now alleges that the "representations . . . concerning the odometer reading or mileage on [the Vehicle] were false, and [Defendants] knew, or should have known, that the representations were false." (*Id.* at 8, ¶ 61.)

Plaintiff is suing several entities who owned the Vehicle at various points in time prior to her purchase. First, Defendant Carvana purchased the Vehicle from its original owner in 2023 and sold it to Barter Holdings Incorporated,[1] which later sold the vehicle to Exclusive Auto. (*Id.* at 4–5, ¶¶ 25, 29, 40.) Then, Plaintiff purchased the Vehicle from Defendant Exclusive Auto (*id.* at 6, ¶¶ 48–49) and the dealership's owner, Defendant Sandoval. (*Id.* at 3, ¶¶ 12–13.) Defendant Exclusive Auto "assigned or sold [the Purchase Agreement] to [Defendant] Western Funding" (*id.* at 3, ¶ 21), which is "a subprime auto lender who purchases Retail Installment Sales contracts from auto dealerships, including Exclusive Auto." (*Id.* at 12, ¶ 98.)

On July 2, 2025, Plaintiff and Defendant Western Funding filed a Stipulation to Stay Case Against Defendants Exclusive Auto, Sandoval, and Western Funding and Proceed in Arbitration in accordance with the arbitration provision in the Purchase Agreement. (Doc. 15 at 2.) Plaintiff indicated that she would continue litigation against Defendant Carvana, which was not party to the Purchase Agreement. (*Id.*) The Court granted the stipulation and stayed the case as to Defendants Exclusive Auto, Sandoval, and Western Funding.

---

[1]   Barter Holdings, Inc. is not a party to this action.

2

(Doc. 16.) Now, Defendant Carvana moves to compel arbitration, even though it was not a signatory to the Purchase Agreement. (Doc. 18 at 2.)

## II.     LEGAL STANDARD

The Federal Arbitration Act ("FAA") "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If a district court finds that an "arbitration agreement is valid and enforceable, then it should stay or dismiss the action pending arbitration proceedings to allow the arbitrator to decide the remaining claims, including those relating to the contract as a whole." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276–77 (9th Cir. 2006).

"The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). Arizona law allows a non-signatory to "compel arbitration with a signatory to an arbitration agreement if the claims at issue are 'intimately founded in and intertwined with the underlying contract obligations.'" *Tradeline Enters. Pvt. Ltd. v. Jess Smith & Sons Cotton, LLC*, 772 Fed. App'x 585, 586 (9th Cir. 2019) (citing *Sun Valley Ranch 308 Ltd. P'ship v. Robson*, 294 P.3d 125, 135 (Ariz. Ct. App. 2012)). The law identifies two specific scenarios in which a nonsignatory may compel arbitration. First, "when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *Sun Valley Ranch*, 294 P.3d at 134. At issue here is the second scenario which occurs when:

3

> [T]he signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

*Id.* at 135. In those circumstances, a party may compel arbitration, even if they were not party to the agreement containing an arbitration clause.

## III.   DISCUSSION

The Court must determine whether Defendant Carvana, a nonsignatory to the Purchase Agreement, may compel arbitration. Plaintiff brings one claim against Defendant Carvana for violation of the Federal Odometer Fraud Act (the "Act"),[2] which Plaintiff also brings against Defendants Exclusive Auto Group and Sandoval. (Doc. 1 at 9, ¶¶ 71–75.) Plaintiff alleges that Defendants violated the Act "by providing false representations regarding the odometer reading and mileage on the [Vehicle], which they knew or should have known where false." (*Id.* ¶ 73.) Specifically, Plaintiff alleges that Defendant Carvana "certified the odometer reading to be 114,197 actual miles, which was false," after Defendant Carvana purchased the Vehicle from the original owner. (*Id.* at 4, ¶¶ 26–30.) Further, Plaintiff alleges that at the time, Defendant Carvana had a policy of obtaining a CarFax report on a vehicle before purchasing or selling a vehicle. (*Id.* at 4–5, ¶¶ 33–35.) Plaintiff also alleges that Defendants Carvana, Exclusive Auto, and Sandoval "fail[ed] to disclose that the [Vehicle] had more miles on it than were reflected on the odometer when they sold the [Vehicle], which Plaintiff ultimately purchased." (*Id.* at 9, ¶ 74.)

Defendant Carvana argues that "Plaintiff's damages are based on the [c]ontract price of the Vehicle," and that "Plaintiff would have no claim against Carvana if she had not

---

[2] "The Odometer Act requires the transferor of a motor vehicle to disclose in writing either 'the cumulative mileage registered on the [vehicle's] odometer' or to '[d]isclose that the actual mileage is unknown, if the transferor knows the odometer reading is different from the number of miles the vehicle has actually traveled.'" *Shaghoian v. Aghajani*, 228 F. Supp. 2d 1107, 1111 (C.D. Cal. 2002) (citing 49 U.S.C. § 32705). "If the transferor, with intent to defraud, fails to comply with these requirements, the transferor is subject to suit by the transferee and may be liable for . . . damages." *Id.*

entered into the [Purchase Agreement] with Exclusive Auto." (Doc. 18 at 4.) Thus, Defendant Carvana asserts that Plaintiff's claim against it "necessarily presumes the existence of" the Purchase Agreement and should therefore be arbitrated. (*Id.*) On the other hand, Plaintiff argues that Defendant "Carvana's liability stems from its own independent acts of odometer fraud, which occurred prior to the vehicle's transfer to Exclusive Auto and Plaintiff's subsequent purchase." (Doc. 24 at 2.)

In *Kramer v. Toyota Motor Corp.*, the Ninth Circuit addressed a similar request to compel arbitration by a nonsignatory. 705 F.3d 1122, 1128–31 (9th Cir. 2013). In that case, the plaintiffs sued Toyota for violations of California law after they "experienced defects in [the] antilock brake systems" of their Toyota Prius vehicles. *Id.* at 1124. Toyota moved to compel arbitration based on the plaintiffs' purchase agreements with the dealerships where they bought their vehicles. *Id.* at 1124–25. Toyota argued that it should have been able to compel arbitration because the plaintiff's claims "rel[ied] on the existence of [the plaintiffs'] vehicle purchase transactions" and because the damages request was based on the "price term" of the purchase agreements. *Id.* at 1130–32. The Court rejected both arguments, determining that none of the claims against Toyota actually relied on the purchase agreements. *Id.* The Court emphasized that "[u]nder California law, mere reference to a term of the Purchase Agreement is not enough" to compel arbitration based on that agreement. *Id.* at 1132.

A different conclusion results under Arizona contract law. Arizona law provides that when a claim "makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Sun Valley Ranch*, 294 P.3d at 135. Plaintiff's claim against Defendants Exclusive Auto, Sandoval, and Carvana references the fact that "Plaintiff ultimately purchased" the vehicle. (Doc. 1 at 9, ¶ 74.) Plaintiff asserts that Defendants' "false representations regarding the odometer reading and mileage" and "fail[ure] to disclose that the [Vehicle] had more miles on it than were reflected on the odometer when they sold [it]" caused her to purchase the Vehicle. (*Id.* ¶¶ 72–75.) Though the claim does

not arise out of any of the terms of the Purchase Agreement, it references the Purchase Agreement and relates to it. Therefore, Defendant Carvana may compel arbitration.

Moreover, Defendant Carvana's alleged misrepresentations may need to be considered alongside those of Defendants Exclusive Auto and Sandoval. Plaintiff alleges that Defendants' misrepresentations and omissions, at various points throughout the chain of title, led her to purchase the Vehicle believing that the mileage was lower than it was in reality. (*Id.* ¶ 74.) Although Defendant Carvana did not act in concert with Defendants Exclusive Auto Group and Sandoval, the alleged misrepresentations and failures to disclose accurate mileage are related. For that reason, it is possible the Court would be required to consider the Purchase Agreement in resolving the claim against Defendant Carvana. *See Sun Valley*, 294 P.3d at 135 ("[T]he trier of fact will be required to consider the [agreement] and the [contract] in resolving plaintiffs' claims.").

Having found that the claims against Defendant Carvana relate to the Purchase Agreement and are intertwined with the contract obligations, the Court will grant Defendant Carvana's Motion to Compel Arbitration. *See id.* (holding that a nonsignatory defendant could compel arbitration in part because "[his] conduct is intertwined with that of the other defendants who signed [the agreement]")*; see also Tradeline Enters.*, 772 Fed. App'x at 586 (allowing for arbitration under Arizona law because the non-signatory's claims were "intimately founded in an intertwined with the underlying contract obligations") (citation omitted). Thus, the Court will stay the case as to Defendant Carvana.

Accordingly,

**IT IS ORDERED** that Defendant Carvana's Motion to Compel Arbitration and Stay Action (Doc. 18) is **granted**.

///

///

///

///

///

**IT IS FURTHER ORDERED** that this case is **stayed** as to Defendant Carvana. The action is now stayed as to all Defendants pending arbitration. The parties are instructed to continue to file joint status reports in accordance with the Court's July 11, 2025 Order (Doc. 16).

Dated this 11th day of December, 2025.

Honorable Steven P. Logan
United States District Judge